High Court of Errors and Appeals, June 16, 1826.

*Ridgely's Notebook V, 73.*

## THOMAS JACOBS and ELIZA, his Wife, v. SELAH YOUNG, Executrix of Nathan Young.

High Court of Errors and Appeals. June 19, 1826.

*Ridgely's Notebook V, 78.*

*Wells* and *Robinson* for plaintiff in error. *Cooper* and *Rogers* for the defendant. . . .

This day, Wednesday, the 21st June, 1826, CHANCELLOR RIDGE-LY, delivered the opinion of himself, BOOTH, CHIEF JUSTICE, and COOPER and STOUT, Justices of the Court of Common Pleas:

This was an action of debt brought in the Supreme Court in Sussex County at October Term, 1823, by Jacobs and his wife, on a guardian bond dated 14th February, 1804, made by James Houston, guardian, and Nathan Young, now deceased, his surety, to the plaintiff Eliza, while sole, then an infant. The time of the marriage of Jacobs and his wife does not appear. The defendant pleaded the Act of Limitations (1 Del.Laws 424, s. 14); that is, that the action had not been commenced within six years after the passing the said bond. To this plea the plaintiffs replied that the action had been brought within three years after the said Eliza came to full age. To this replication the defendant demurred generally. No other saving of the Act of Limitations was pleaded than the infancy of the plaintiff Eliza, and by the demurrer it is admitted that the suit was commenced within three years after she arrived to twenty-one years of age.

The question now is whether the plaintiffs were in time in suing within three years after the said Eliza came to full age. No disability on account of coverture is pleaded; and had the defendant supposed that the marriage of the said Eliza would have operated so as to afford a speedier removal of the disability of infancy, and to give effect to the Act of Limitations from the date of the marriage, or that it would in any manner have been a bar to the recovery, the defendant should have put that fact on the record. And then an issue might have been taken on it, or the plaintiff might have demurred to it, and thus it would have been brought distinctly into view as the ground upon which the defendant relied against a recovery on this bond. As the case now stands it does not appear whether this marriage took place at the age of fifteen, twenty, twenty-one or twenty-two of the said Eliza. If it had happened at her age of fifteen, or at any period so that six years had elapsed before the suit was brought, there would have been some fact upon which the defendant might have built his argument that the lapse of six years from the marriage would bar the suit of the husband and wife during his lifetime. But now the case rests on the naked proposition

that the husband and wife cannot sue the bond within three years after she arrives to full age.

In support of this demurrer the defendant in error relies upon *Shankland's Case*,[1] decided on the unanimous opinion of this Court at an adjournment of the Court on the 21st October, 1823, on great deliberation, as it had been decided by the unanimous opinion of the Court of Common Pleas. The question in that case was whether the saving of the right of a *feme covert* in the second section of "An Act to compel executors to give security for the faithful discharge of the duty reposed in them by their testators, and for other purposes," 2 Del.Laws 888, applied to the husband and wife, during the lives of such husband and wife, upon a suit brought by them on a testamentary bond made after the marriage. It was then adjudged that the right of the husband and wife to bring a suit after six years from the passing of the bond was not saved, for that he was not under any disabilities in the Statute; but that it was saved to the wife alone, and not to her until after the disability was removed.

That decision, supposing that it militated against the plaintiffs in this cause, has been more than questioned in the argument on the part of the plaintiffs; and, to impugn its authority, several cases have been read as being in direct opposition to it. I shall notice the most prominent, first remarking, as is noted in that case, that there then was no plea of infancy, and that there was no question on that head, and that it never came into discussion or consideration. Indeed, the court expressly declared that infancy at the time of marriage and when the bond was given would have given rise to another question as to the effect of the saving clause of the Act of Assembly. Hence it is evident that the court, in deciding the *Case of Shankland*, confined itself simply to the question of coverture.

In *Belch v. Harvey*, cited from Sugd.Vend., Appendix 19, the chief question was what length of time would bar an equity of redemption. Thirteen years had passed between the death of the husband and the bill filed for redemption. The person claiming the equity of redemption attempted to prove that she, the plaintiff, was an infant at the time of her marriage, and that the marriage continued many years, both which, taken together, she or her counsel supposed would excuse the non-redemption for many years. Lord Chancellor Talbot said if she was of full age at the time of her marriage the time would run against her notwithstanding the subsequent marriage. By the Statute, 21 Jac. I, c. 16, persons having any right or title of entry must enter within

---

[1] *Ridgely's Notebook III, 333.*

twenty years after titles accrued; but the title of infants, *femes coverts* etc. are saved so [long] as they commence their suits within ten years after imperfection removed. She had not sued within ten years after she became discovert. The Chancellor said that it was very doubtful with him whether the plaintiff was an infant at the time of her mariarge, but taking it that she was an infant, as the court has not in general thought proper to exceed twenty years, where there was no disability, in imitation of the first clauses of the Statute, so he was of opinion that after the disability removed, the time fixed for prosecuting in the proviso, which is ten years, should also be observed; for the proviso containing an exception of several cases out of the purview of the Statute, if the parties at law should avail themselves by the proviso, they must take it under such restrictions as the legislature has annexed to it, that is to say, within ten years after the impediment ceases. The persons who are the subject of the proviso are not disabled from suing; they are only excused from the necessity of doing it during the continuance of the legal disability. Therefore, when that difficulty is removed, the time allowed after such impediment removed for their further proceedings should be shortened. The import of that case is that after the impediment is removed or the disability ceases, whether it arises from infancy or coverture, or from both, the person suing should be restricted to ten years after the disability is removed; for this good reason, that if the party would avail herself of the exception in the Statute she must take it under such restrictions as the legislature annexed to it, and that is to sue within ten years after the impediment is removed.

But that case is not like *Shankland's* nor the present; for in the former the only question was whether the suit brought by the husband and wife during the coverture was not barred by the lapse of six years; and the court said that it was, for the husband was not within the saving clause of the Act of Assembly; that he had been under no disability and might have sued at any time, and could not claim the disability of the wife to excuse him; but that after the disability of the wife was removed, she might sue within three years. And it is not like this case, for there more than the ten years had expired after the legal disability had been removed, and here the suit is brought within the three years saved to the infant; there it was after the expiration of the time saved to the infant.

*George and Wife*, 6 East 80, was cited as being contrary to *Shankland's Case* and as being proper to be relied on in the decision of the question now depending. That case was thus. The ancestor died seised, leaving a son and daughter, both infants;

and on the death of the ancestor a stranger entered, and the son soon after went to sea and was supposed to have died abroad, within age. It was held that the daughter was not entitled to twenty years to make her entry after the death of her brother, but only to ten years, more than twenty having, in the whole, elapsed since the death of the person last seised. That case depended on the proper construction of the Statute, 21 Jac. I, c. 16, s. 1, which enacts that no person shall make any entry into lands but within twenty years next after their right or title which shall first descend or accrue to the same. And then there is a saving, that if any person or persons entitled to such writ, or that shall have such right or title of entry, shall be, at the time of said right or title, first descended, accrued or fallen, within the age of twenty-one, that then such person or persons, and his and their heir and heirs, shall or may, notwithstanding the said twenty years be expired, bring his action or make his entry as he might have done before the Act; so as such person and persons, or his or their heir and heirs, shall, within ten years next after his and their full age etc. or death, take benefit of and sue forth the same, and at no time after the said ten years.

That case turns on this point, that the Statute gave ten years after the death of the party dying under disability, and that more than ten years had expired after the death of the brother before the ejectment was brought. Lord Ellenborough said that the word "death" must mean and refer to the death of the person to whom the right first accrued, and whose heir the claimant is; and the Statute meant that the heir of every person, to which person a right of entry had accrued during any of the disabilities there stated, should have ten years from the death of his ancestor to whom the right first accrued during any period of disability and who died under such disability (notwithstanding the twenty years from the first accruing of the title of the ancestor should have before expired). Now, as the ten years had expired since the death of the brother, and as the word "death" meant and referred to the death of the person to whom the right first accrued, that is the brother, the period saved in the Statute had elapsed, and the sister, who was heir of the brother, could not sustain her action.

This was a construction upon the special words of the Statute; but it has no relation in fact or principle to *Shankland's Case,* or to this, both of which in their circumstances, and in the provisions of the Statutes which regulate them, are dissimilar with each other, and with this case in East; and yet that case is produced to show the mistakes of the court in the *Case of Shankland,* and that here the replication is good and available. Here

are no successive disabilities, neither were there in *Shankland's Case,* and that principle in East can have no application.

The case of *Demarest and Wife against Wynkoop and others* is another case of successive disabilities, 3 Johns.Ch. 129. There Chancellor Kent decided that this disability which entitles the party to the benefit of the proviso must be existing at the time the right first accrues; so that, if, during the saving allowed to an infant, coverture arises, the time continues to run notwithstanding such second disability; that successive or cumulative disabilities are not within the policy or sound construction of the Statute. In that case Hannah, the wife, married at nineteen. She was of age in 1802, and their bill was filed in 1815, so that ten years had expired since her disability of infancy had ceased. The disability of coverture was relied on, but that was rejected both as to the husband and wife. And in truth that case has no bearing on *Shankland's* or on this, for the court went on the principle to decide against successive disabilities. The husband and wife, though, relied on the coverture, and not upon infancy, but it did not avail them. If it were possible to wrest the case from its proper meaning, it would support the decision in *Shankland's Case.*

The case of *Eagen and Seraphine, his Wife,* 4 Mass. 182, was cited by plaintiff's counsel. That was a writ of error brought to reverse a judgment of confiscation, rendered in 1780, against Michael Martin and Tilpher, his wife, of lands held by Martin and his wife, in her right. This writ was sued out in July, 1806, by Eagen and Seraphine, his wife, which said Seraphine was the daughter of the said Martin and Tilpher, his wife. The Statute limited such writs of error to twenty years next after the rendition of judgment. There was a saving in the Statute of five years, etc. The defendants pleaded the limitation of twenty years. The defendants replied that the title of said Seraphine to said writ of error first accrued in January, 1783; that at that time she was an infant of the age of fifteen years and no more; and that afterwards, to wit, on the 19th June, 1785, the said Seraphine being still an infant, *viz* of the age of eighteen years and no more, she was married to the said Eagen, and has been ever since covert of the said Eagen. To this replication the defendants rejoined, agreeing to the infancy of the wife at the time her title accrued, and also to her marriage during her infancy, said that after her title to the writ of error accrued and after she became of full age, five years had elapsed before suing out the said writ of error. To this rejoinder the plaintiffs demurred generally, and the defendants joined in demurrer.

Chief Justice Parsons delivered the opinion of the court. He said that it was very clear that the infancy of the wife, at the time her title accrued, could not bring her within the exception of the Statute, because the writ was not sued out within five years after her coming of age. And, "As the plaintiffs are barred by the enacting clause unless they are within the proviso, the effect of their replication must depend upon the construction of the proviso. And we are all satisfied that the disability, to be sufficient to bring the plaintiffs within, must be existing at the time their right first accrued." And he said, "In the present case the husband might have sued his writ within the twenty years. He was not under any disability, and ought to have prosecuted the rights of his wife." And he reasoned further against this second, the successive disability from coverture. But he strongly intimated, as above, that the suit could not be maintained because the husband did not prosecute the wife's right within the twenty years, and so far evidently was the same kind of reasoning as this court in *Shankland's Case*. The coverture was the only matter under consideration, and that as the husband was under no disability he ought to have prosecuted the writ within twenty years.

The case under consideration is unlike *Shankland's* in every particular. It does not appear when Jacobs and his wife married; certainly though after the bond was made, but whether two years or six years before the suit was brought is not known. The suit was brought before the three years, the time saved to infants, had expired, and consequently within the proper period. Coverture is not made a part of the case; and as no other question than infancy is made by the pleading, the plaintiffs are not barred, the suit being brought within three years after the wife arrived to full age. The case comes not only within the words, but within the intent and meaning of the Act of Assembly [1 Del. Laws 424, s. 14]. In this decision we do not contradict, nor in the least [oppose] *Shankland's Case*, and we do not mean to do so, for that is supported by adjudged cases, similar in principle, by fair reasoning, and by the meaning and intention of the Act of Assembly, and by the words.

The Act of Assembly never began to run against this infant, according to the record, until her age of twenty-one years. It does not appear when the guardianship ceased, nor that she had a right to demand this money of her guardian, or of his representative, until her age of twenty-one years; and all we know is that her title accrued at her age of twenty-one, and that the suit was brought within the three years after.

Judgment unanimously reversed.

[NOTE.] See *The State of Delaware v. William Shankland (Shankland's Case), Ridgely's Notebook III, 333.*